UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KRISTEN HUSBY, Individually
and on behalf of all others similarly situated,
and MICHAEL HUSBY, Individually,

　　　　Plaintiffs,

v.

IOVATE HEALTH SCIENCES USA, INC.,
IOVATE HEALTH SCIENCES INTERNATIONAL, INC.,
IOVATE HEALTH SCIENCES GROUP, INC.,
IOVATE HEALTH SCIENCES RESEARCH, INC.,
IOVATE HC 2005 FORMULATIONS LTD.,
MUSCLETECH, INC., MUSCLETECH,
MUSCLETECH RESEARCH AND DEVELOPMENT, INC.,
Jointly and Severally,

　　　　Defendants.

Case No.
Hon.

_____/

SOMMERS SCHWARTZ, P.C.
Jason J. Thompson (P47184)
Robert H. Darling (P25523)
Matthew G. Curtis (P37999)
Attorneys for Plaintiffs
2000 Town Center, Ste. 900
Southfield, MI 48075
(248) 355-0300

_____/


**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

Dockets.Justia.com

# TABLE OF CONTENTS

NATURE OF THE CASE...........................................................................................................2

PARTIES.................................................................................................................................2

JURISDICTION AND VENUE ..............................................................................................4

FACTUAL ALLEGATIONS...................................................................................................4

    I.      Obesity and Diet Supplements ...........................................................4

    II.     Hydroxycut........................................................................................5

    III.    Reports of Hydroxycut-Related Injuries ...........................................6

    IV.    FDA Writes Iovate on April 30, 2009................................................10

    V.     FDA Hydroxycut Warnings ..............................................................12

    VI.    Hydroxycut Products are Recalled....................................................17

    VII.   Plaintiff's Experience .......................................................................21

CLASS ACTION ALLEGATIONS........................................................................................22

TOLLING OF APPLICABLE STATUTE OF LIMITATIONS .............................................25

COUNT I - PRODUCT LIABILITY ACTION.....................................................................25

COUNT II - PRODUCT LIABILITY ACTION – WARNING .............................................26

COUNT III - BREACH OF EXPRESSED WARRANTY......................................................28

COUNT IV - NEGLIGENCE ...............................................................................................29

COUNT V - GROSS NEGLIGENCE....................................................................................31

COUNT VI - RECKLESSNESS............................................................................................31

COUNT VII - BREACH OF IMPLIED WARRANTY.........................................................32

COUNT VIII - FRAUD AND MISREPRESENTATION......................................................32

COUNT IX - MICHIGAN CONSUMERS PROTECTION ACT .........................................33

DEMAND FOR JURY TRIAL..............................................................................................35

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER ● SUITE 900 ● SOUTHFIELD, MICHIGAN 48075 ● (248) 355-0300

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KRISTEN HUSBY, Individually
and on behalf of all others similarly situated,
and MICHAEL HUSBY, Individually,

                        Case No.
   Plaintiffs,                Hon.

v.


IOVATE HEALTH SCIENCES USA, INC.,
IOVATE HEALTH SCIENCES INTERNATIONAL, INC.,
IOVATE HEALTH SCIENCES GROUP, INC.,
IOVATE HEALTH SCIENCES RESEARCH, INC.,
IOVATE HC 2005 FORMULATIONS LTD.,
MUSCLETECH, INC., MUSCLETECH,
MUSCLETECH RESEARCH AND DEVELOPMENT, INC.,
Jointly and Severally,

   Defendants.

_____/

SOMMERS SCHWARTZ, P.C.
Jason J. Thompson (P47184)
Robert H. Darling (P25523)
Matthew G. Curtis (P37999)
Attorneys for Plaintiffs
2000 Town Center, Ste. 900
Southfield, MI 48075
(248) 355-0300

_____/

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

      NOW COME the Plaintiffs Kristen and Michael Husby, by and through their attorneys

SOMMERS SCHWARTZ, P.C. and for their complaint against Iovate Health Sciences USA, Inc.,

Iovate Health Sciences International, Inc., Iovate Health Sciences Group, Inc., Iovate Health Sciences

Research, Inc., Iovate HC 2005 Formulations Ltd., Muscletech, Inc., Muscletech, Muscletech Research

1

and Development, Inc., Jointly and Severally (collectively hereinafter "Product Defendants") states as follows:

## NATURE OF THE CASE

1.     This putative class action seeks damages suffered by Plaintiffs Kristen and Michael Husby as a direct and proximate result of the wrongful conduct of the Product Defendants in connection with the design, testing, quality assurance, manufacturing, labeling, warning, packaging, marketing, advertising, promotion, supply, distribution, post-market monitoring and/or surveillance, sale, and recall of its Hydroxycut weight loss products ("Hydroxycut Products").

## PARTIES

2.     Plaintiffs Kristen and Michael Husby, husband and wife (hereinafter "Plaintiff" or "Plaintiffs") are and were at all times relevant hereto residents of the City of Livonia, State of Michigan. Plaintiff used Hydroxycut Products manufactured by the Product Defendants which gave rise to severe injuries.   As a direct and proximate result of using Hydroxycut Products, Plaintiff Kristen Husby suffered liver injuries resultant in the injuries and damages set forth herein.

3.     Iovate Health Sciences USA, Inc. is a foreign corporation with its principle place of business at 3880 Jeffrey Blvd., Buffalo, NY 14219.

4.      Iovate Health Sciences International, Inc. is a foreign corporation with its principle place of business located at 381 North Service Road West, Oakville, Ontario, Canada L6M-0H4.

5.     Iovate Health Sciences Group, Inc. is a foreign corporation with its principle place of business at 381 North Service Road West, Oakville, Ontario, Canada L6M-0H4.

6.     Iovate Health Sciences Research, Inc. is a foreign corporation with its principle place of business located at 381 North Service Road West, Oakville, Ontario, Canada L6M-0H4.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

7.      Iovate HC 2005 Formulations Ltd. is a foreign corporation with its principle place of business located at 381 North Service Road West, Oakville, Ontario, Canada L6M-0H4.

8.      Muscletech, Inc. is a foreign corporation with its principle place of business located at 2422 Broadway, Suite B, Lubick, TX 79401.

9.      Muscletech is a foreign corporation with its principle place of business located at 1785 S. Park Avenue, Buffalo, NY 14220.

10.     Muscletech Research and Development, Inc. is a foreign corporation with its principle place of business located at 7050 Telford Way, Mississauga, Ontario, Canada L5S-1B7.

11.     The above mentioned companies (hereinafter "Product Defendants") are named as Defendants herein.

12.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, that the employees of Product Defendants, their subsidiaries, affiliates and other related entities, were the agents, servants, and employees of the Product Defendants and at all times herein mentioned, each was acting within the purpose of scope of said agency and employment.  Whenever reference in this complaint is made to any act or transaction of any defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or other representatives of said Product Defendants committed, knew of, performed, authorized, ratified, and/or directed such act or transaction on behalf of said Product Defendants while actively engaged in the scope of their duties.

## JURISDICTION AND VENUE

13.     This Court has diversity subject matter jurisdiction over this class action pursuant to 28

U.S.C. § 1332(d) in that this is a civil action filed under Rule 23 of the Federal Rules of Civil Procedure

and members of the class of plaintiffs are citizens of a State different from the Product Defendants, and

the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C.

§ 1332(d)(2), (6).

14.     Venue in this judicial district is proper pursuant to 28 U.S.C. §1331 because the

substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

15.     The Product Defendants are in the business of formulating, designing, manufacturing,

marketing, and advertising, distributing and selling various dietary supplements including muscle

builders and fat burners/thermogenics.

16.     Said products are sold with the stores throughout the United States.

17.     In 2008, at least 9 million packages of Hydroxycut Products were sold in this country.

## I.     Obesity and Diet Supplements

18.     Obesity has become an increasingly important public health problem in the United States.

Recent data show that more than 30% of adults are obese and 65% overweight.

19.     The use of dietary supplements for weight loss has become increasingly popular, as

reflected by the $55.4 billion spent in United States in 2006 for weight loss and diet control.  Based on a

study by the National Center for Complimentary and Alternative Medicine (NCCAM), 36% of adults

are using some form of complimentary or alternative medicine, which rises to 62% when including megavitamins or prayer.

20.     Although dietary and herbal supplements are governed under the DSHEA (Dietary Supplements Health and Education Act) of 1994, they are not presently regulated by the US Federal Drug Administration, and the safety profiles of many are unknown.

## II.     Hydroxycut

21.     Hydroxycut is the brand name of some of America's top-selling weight-loss products which are taken by millions of consumers each year.  Hydroxycut products are made by Iovate Health Sciences of Oakville, Ontario, which has over 750 items sold in more than 70 countries around the world.

22.     Hydroxycut is a Registered Trademark and is part of the name of many products, examples of which include Hydroxycut, Hydroxycut Hardcore, and Hydroxycut Caffeine Free. Iovate and Muscletech, a company owned by Iovate, both market Hydroxycut products.

23.     Hydroxycut has been marketed by Iovate Health Sciences, Inc (381 North Service Rd. W., Oakville, ON L6M 0H4, Canada) and manufactured by Muscletech (Blassdell, NY, USA and Mississauga, Ontario, Canada) as a weight control, fat-burner, and energy enhancement dietary supplement. Hydroxycut products bear the Iovate or Muscletech Brand names. In the United States, Hydroxycut products are distributed by Iovate Health Sciences USA, Inc., of Blasdell, New York.

24.     The products contain a variety of individual ingredients as well as numerous proprietary blends such as "Hydroxagen Plus, Hydroxy Tea, HydroxyTea CF, Hydroxycut Proprietary Blend, Max! Liqui-Burn, Max! Weight-Loss Matrix, Hydroxycut Hardcore Proprietary Blend Proxyclene, Noreidrol Intensity focus Blend, Lasidrate Delivery Blend, or Yohimbacore."

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

**III.     Reports of Hydroxycut-Related Injuries**

25.     In 2002, the Center for Food Safety and Applied Nutrition's (CFSAN) adverse event reporting system, CAERS, began receiving reports of liver-related illnesses in persons who reported consuming the dietary supplement Hydroxycut capsules/caplets for periods ranging from as short as a week to two (2) months. Since the earlier formulation of Hydroxycut contained ephedra, it was generally believed that the reports of liver injury associated with the use of the product were due either to ephedra or a combination of the ingredients found in the product. However, following the removal of ephedra from Hydroxycut capsules/caplets, CFSAN continued to receive reports of liver injury associated with the use of Hydroxycut capsules/caplets. In addition, CFSAN became aware of reports of Hydroxycut-associated liver toxicity published in the peer-reviewed literature and received communications from independent hepatologists regarding cases of liver toxicity associated with the use of the Hydroxycut capsules/caplets.

*Hydroxycut-associated liver toxicity reports in CAERS.*

The FDA reports that to-date, 23 case reports of Hydroxycut-associated liver toxicity have been identified in CAERS for the period 2002 to the present. The number of reports, by event date, is listed below:

| Year of event | Number of reports |
|---------------|-------------------|
| 2002 | 4 |
| 2003 | 3 |
| 2004 | 6 |
| 2005 | 0 |
| 2006 | 1 |
| 2007 | 6 |
| 2008 | 3 |

| | |
|------|------|
| 2009 | 0 |
| Total | 23 |

26.     For cases in which gender was known, 15 (65%) were female. Ages ranged from 20 years to 51 years (median = 29 years). Sixteen cases (70%) were hospitalized. The majority of cases reported no underlying risk factors for liver disease (e.g., no history of viral hepatitis, no HIV infection, no autoimmune diseases). Although the reports vary in detail, several reports describe work-ups that ruled out infectious, autoimmune, and metabolic causes of liver disease. The severity of illness ranged from asymptomatic elevations in serum bilirubin to acute liver failure (one patient received a liver transplant in 2002, a second patient was reportedly waiting for a liver transplant in 2004) to one death.

27.     On March 24, 2009, CFSAN received information regarding the fatal case. The patient was a 20-year-old male who presented to an emergency room on January 19, 2007 in liver failure and hepatic encephalopathy. He was subsequently transferred to a liver transplant center where, in the operating room, he was found to have necrosis of both the large and small intestines. Given these findings, the procedure was aborted and the patient was returned to the intensive care unit. He died on February 12, 2007.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

***Reports of Hydroxycut-associated liver toxicity in the peer-reviewed literature.***

28.     The FDA indicates that it was aware of four published reports in the peer-reviewed literature that describe liver disease that occurred in six persons following the consumption of Hydroxycut capsules/ caplets.[1]

29.     The FDA reports that the aforementioned cases are consistent with the diagnosis of idiosyncratic hepatotoxicity for a number of reasons: the temporal relationship between the consumption of Hydroxycut capsules/caplets and the development of acute liver injury in persons who had no history of known liver disease; the exclusion of other causes of liver disease following extensive work-ups; the resolution of liver injury upon discontinuation of Hydroxycut capsules/caplets; and the development of liver injury is not dose dependent. Also apparent were two distinct patterns of liver injury: cholestatic and necrotic. It is not unusual for a single herbal preparation to produce more than one type of clinicopathologic liver injury.

***Discussions with hepatologists.***

30.     The FDA reported findings from discussions in March and April 2009 with hepatologists Tse-Ling Fong, M.D. of the University of Southern California, and William Lee, M.D. of the University of Texas Southwestern Medical Center, CFSAN has become aware of these physicians' case series of patients with severe liver disease associated with the use of Hydroxycut capsules/caplets. Two cases

---

[1] Stevens T, Qadri A, Zein NN. Two patients with acute liver injury associated with use of the herbal weight-loss supplement Hydroxycut. *Ann Intern Med* 2005;142:477-8;  Jones FJ, Andrews AH. Acute liver injury associated with the herbal supplement Hydroxycut in a soldier deployed to Iraq. *Am J Gastroenterol* 2007;102:2357;  Dara L, Hewett J, Lim JK. Hydroxycut hepatotoxicity: A case series and review of liver toxicity from herbal weight loss supplements. *World J Gastroenterol* 2008;14:6999-7004; Shim M, Saab S. Severe hepatotoxicity due to Hydroxycut: a case report. *Dig Dis Sci* 2009 Feb;54(2):406-8. Epub 2008 Jul 26.

from this series, representing additional cases to the ones reported to CFSAN, underwent liver transplantation following acute liver failure.

***Serious non-hepatic adverse events identified in the CAERS database or the literature***.

31.     The FDA confirmed that when the CAERS database was queried for other serious adverse events associated with Hydroxycut, cases of seizures, rhabdomyolysis, and cardiovascular disorders were identified. For example, from 2004 to 2008, the CAERS database received four case reports describing consumers who experienced a seizure following ingestion of Hydroxycut. In one instance, a 26-year-old consumer increased her daily intake of Hydroxycut from 2 to 4 caplets on December 6, 2008. At 2 p.m. that day, following ingestion of the second serving of 2 caplets, the consumer felt tired and lay down. She was found by another person to be having a "seizure" (shaking and drooling). The consumer was taken to the emergency room where a physician told her to discontinue using Hydroxycut.

32.     Furthermore, according to the FDA, the case report describing rhabdomyolysis involved a 23-year-old male who had been consuming Hydroxycut on and off over an eight-month period in 2002. On the day of hospital admission, he had taken 2 tablets for energy prior to working out. He reported feeling nausea, and then several hours later, he had severe shoulder pain and dark urine. He was diagnosed as having rhabdomyolysis on admission to the hospital. In addition to this CAERS report, CFSAN is aware of one case of Hydroxycut capsules/caplets-associated rhabdomyolysis reported in the peer-reviewed literature. In this report, Dehoney and Wellen described an 18-year-old male who experienced rhabdomyolysis after consuming Hydroxycut as per the product's instructions. During his overnight hospitalization, he received 6 liters of fluid before discharge.

33.     The Agency also identified 46 reports in CAERS of Hydroxycut capsules/caplets-associated cardiovascular adverse events. These events ranged in severity from palpitations to a heart

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

attack. Nineteen of these reports were received during or after 2004, a period when Hydroxycut's formulation was believed to be free of ephedra.

34.     Prior to 2004, Hydroxycut, contained ephedra or Ma Huang as an ingredient; however, by the beginning of 2004, Hydroxycut was ephedra-free. Subsequent to the removal of ephedra, Hydroxycut had undergone numerous formulation changes.

35.     However, following the removal of ephedra from Hydroxycut, CFSAN continued to receive reports of liver injury associated with the use of Hydroxycut. An increasing number of case reports have emerged which suggest causative supplement-associated liver toxicity. Hydroxycut is an herbal weight loss supplement that has been suspected to have possible liver toxicity.

## IV.     FDA Writes Iovate on April 30, 2009

36.     On April 30, 2009 Stephen F. Sundlof, Director Center for Food Safety and Applied Nutrition wrote to Mr. Terry Begley of Iovate Health Sciences, Inc. The letter confirmed that on March 31, 2009, the U.S. Food and Drug Administration (FDA or the Agency) informed Iovate during a meeting of concerns that the Agency had about liver toxicity associated with the use of multiple versions of the dietary supplement Hydroxycut marketed under the Iovate and MuscleTech brand names. The FDA's concerns were based on adverse events reported to FDA, case reports in the peer-reviewed literature, and in a case series described by hepatologists to FDA. The Agency advised Iovate that it had concluded that the ingestion of the dietary supplement Hydroxycut presents a "severe potentially life-threatening hazard to some users."

37.     The FDA reported that it held a telephone conversation on April 29, 2009, between outside counsel for Iovate Health Sciences, Inc., and Mr. Eric Blumberg, Deputy Chief Counsel, Litigation, Office of Chief Counsel, FDA, wherein the Agency explained its conclusions about the

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

safety of Hydroxycut products and the additional actions that the FDA expected Iovate to take in response to the serious public health hazards presented by the Hydroxycut dietary supplements.

38. The FDA concluded that three lines of evidence derived from multiple disparate sources suggest it is very likely that exposure to Hydroxycut capsules/caplets can cause idiosyncratic hepatotoxicity. First, many of the subjects described in the adverse event reports to CAERS, in the peer-reviewed literature, and in the case series described by hepatologists reported no history of liver disease or risk factors for liver disease (e.g., alcohol consumption, previous viral infection, hereditary factors, etc.) prior to experiencing liver injury following the ingestion of Hydroxycut capsules/caplets. Second, in many subjects, thorough diagnostic evaluations performed in multiple settings ruled out a number of known causes of liver disease, including viral hepatitis, autoimmune diseases, and metabolic/inherited disorders. Third, prompt resolution of liver disease occurred in a number of patients following cessation of Hydroxycut capsules/caplets ingestion. While some adverse event reports involved users who had consumed more than the daily dosage recommended on the products' labeling, if these reports were excluded from consideration, the remaining evidence demonstrates liver-related adverse effects following exposure to Hydroxycut capsules/caplets. In addition to Hydroxycut capsules/caplets-associated liver-related adverse effects, CFSAN is aware of a number of CAERS reports that describe seizures, rhabdomyolysis, and cardiovascular signs and symptoms.

39. The FDA, based on the totality of evidence, concluded that the ingestion of the dietary supplement, Hydroxycut, presents a severe potentially life-threatening hazard to some users.

40. The FDA also disagreed with claims of Iovate that some Hyroxycut products were safe:

> While the firm believes that the lack of reported adverse events associated with the use of the Hydroxycut shot product and the drink mixes is evidence that they are safe, FDA disagrees. The reports of acute liver injury in individuals who have consumed Hydroxycut capsules/caplets represent idosyncratic reactions, meaning that the injuries have occurred as a result of conditions peculiar to the affected individuals. As such, the incidence of injuries of this nature is unpredictable and may result from peculiar

metabolic interactions between one or more Hydroxycut ingredient and the host's physiologic system. There are no data to indicate that the dose or duration of use of any particular Hydroxycut ingredient, or the gender, or any other identifiable trait of a Hydroxycut user predicts the risk of an adverse event. In light of this, and because the fact that the drink mixes and 'shot' products share ingredients with products known to be associated with adverse events, and because it is unknown which ingredient(s) of Hydroxycut are responsible for producing the idiosyncratic reactions, we believe that the reasonable conclusion to be drawn is that these products present the same risks as the Hydroxycut capsules/caplets.

41.     Given the seriousness of the hazard presented by Hydroxycut, Iovate Health Sciences, Inc. voluntarily agreed to the following:

1. To cease distribution of all existing formulations of Hydroxycut.

2. To recall from the marketplace, to the consumer/user level, all existing formulations of Hydroxycut.

As we stated above, the ingestion of the dietary supplement Hydroxycut presents a severe potentially life-threatening hazard to some users. FDA considers the recalled products to be adulterated under section 402(f)(1)(A) of the Federal Food, Drug, and Cosmetic Act [21 U.S.C. § 342(f)(1)(A)] (the Act) in that the dietary supplements present a significant or unreasonable risk of illness or injury under conditions of use recommended or suggested in labeling.

## V.     FDA Hydroxycut Warnings

42.     On May 1, 2009, the FDA issued an advisory which stated, "Although the liver damage appears to be relatively rare, FDA believes consumers should not be exposed to unnecessary risk".  The number of adverse event reports described by the FDA is small relative to the many millions of people who have used Hydroxycut products over the 7 years referenced by the FDA.  Iovate's own assessment of the potential risk associated with the use of these products differs from that expressed by the agency. Every product marketed by Iovate is evaluated during its development for the safety of its individual ingredients.  Additionally, independent third-party experts from the leading independent scientific firm specializing in ingredient assessment, toxicology and product safety for the nutritional and pharmaceutical industry reviews the safety of Iovate's ingredients and formulas before products are

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

introduced into the market place. Only after this the external review is completed does Iovate release a formula.

43.    The U. S. FDA is warning consumers (5/1/09) to immediately stop using Hydroxycut products by Iovate Health Services, Inc. of Oakville, Ontario. Some Hydroxycut products are associated with a number of serious liver injuries. Iovate has agreed to immediately recall Hydroxycut products from the US market.

44.    The FDA issued "dear doctor" letter that stated as follows:

Dear Health Care Professional Colleague:

We are alerting you about a dietary supplement product that we believe presents a serious public health risk. Hydroxycut products are distributed by Iovate Health Sciences Inc., Oakville, Ontario Canada and distributed by Iovate Health Sciences U.S.A., Inc. of Blasdell, NY, and have been implicated in several cases of serious liver injury. The Food and Drug Administration (FDA) has received 23 reports of adverse liver effects in users of Hydroxycut products, ranging from asymptomatic hyperbilirubinemia, jaundice, liver damage, liver transplant, and death. The injuries reported to FDA occurred in persons between 21 and 51 years of age. No other cause for liver disease was identified. In the majority of cases, no preexisting medical condition that would predispose the consumer to liver injury was identified. In some cases, discontinuation of Hydroxycut usage resulted in recovery of liver function. Although the liver damage appears to be relatively rare, FDA believes consumers should not be exposed to unnecessary risk. FDA has also identified several other serious adverse events associated with Hydroxycut, including cases of seizures, rhabdomyolysis, and cardiovascular disorders ranging in severity from palpitations to a heart attack.

Hydroxycut products bear the Iovate or Muscletech Brand name and are multi-ingredient dietary supplements marketed for weight loss, as fat burners, energy enhancers, as low carb diet aids, and to promote water loss. The following products have been recalled by the company:

- Hydroxycut Regular Rapid Release Caplets;

- Hydroxycut Caffeine-Free Rapid Release Caplets;

- Hydroxycut Hardcore Liquid Caplets;

- Hydroxycut Max Liquid Caplets;

- Hydroxycut Regular Drink Packets;

- Hydroxycut Caffeine-Free Drink Packets;

- Hydroxycut Hardcore Drink Packets (Ignition Stix);

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

- Hydroxycut Max Drink Packets;

- Hydroxycut Liquid Shots;

- Hydroxycut Hardcore RTDs (Ready-to-Drink);

- Hydroxycut Max Aqua Shed;

- Hydroxycut 24;

- Hydroxycut Carb Control; and

- Hydroxycut Natural.

Based on the information available to FDA, we cannot determine exactly which ingredient(s) or proprietary blends in Hydroxycut may be associated with liver injury, or what other factors, such as health condition, length of use, dosage, or use along with other dietary supplements or drugs, may affect the risk of using Hydroxycut.

FDA is warning consumers to immediately stop use of these products. FDA has issued a consumer warning advising of the potential risks associated with the use of these products and advising consumers to consult their health care provider if they are experiencing symptoms possibly associated with this product, particularly nausea, weakness or fatigue, fever, abdominal pain, or any change in skin color.

We urge you to review your cases of hepatitis in order to determine if any may be related to the use of dietary supplements in these patients. Adverse events associated with the use of dietary supplements should be reported as soon as possible to FDA's MedWatch program by telephone (1-800-332-1088) or Internet (http://www.fda.gov/medwatch).

Thank you for your efforts and cooperation in addressing this potentially serious public health issue. For additional information, see http://www.cfsan.fda.gov.

45. On May 1, 2009, the U.S. FDA warned consumers to stop using Hydroxycut products, as the dietary supplements were felt to be linked to one death, and 23 reports of serious health problems ranging from jaundice and elevated liver enzymes, an indicator of potential liver injury, to liver damage requiring liver transplant. Other health problems reported include seizures, cardiovascular disorders, and rhabdomyolysis.

46. Liver injury was reported by patients at the doses of Hydroxycut recommended on the bottle. Symptoms of serious liver disease include jaundice (yellowing of the skin or whites of the eyes),

and brown urine. Non-specific symptoms of liver disease can include nausea, vomiting, light colored stools, excessive fatigue, weakness, stomach or abdominal pain, itching and loss of appetite.

47. The packaging of the Hydroxycut products promotes their use to "increase energy," "burn calories" and "control appetite" and boasts that they are made with "clinically proven ingredients." In addition, the packaging claims that "Hydroxycut® Works Fast!" The packaging further states as follows:

> "Hydroxycut® is America's #1 selling weight-loss supplement. Hydroxycut really does work – fast! Utilizing sophisticated Rapid-Release Caplets, Hydroxycut is doctor formulated+ with clinically proven ingredients top help you lose up to 4.5 times the weight than diet and exercise alone._,‡ Now with an improved HydroxyTea® blend, there's even more reason to love Hydroxycut®."

The packaging also states: "[d]on't take chances – you deserve the best! Put your trust in the power of Hydroxycut® and discover for yourself why millions of men and women all across America have used Hydroxycut. For fast weights loss, make Hydroxycut® your #1 choice today!

48. The Hydroxycut product packaging makes much of Hyroxycut being "doctor formulated" and approved. In this regard, the side of the Hydroxycut product packaging boasts that the Hydroxcut products are "Backed by Science" and includes a picture of Dr. John Marshall, D.O., "Resident Physician" and his statement that "Hydroxycut® is a product that has ingredients proven to work. I've recommended it to a number of men and women and have used it myself with fantastic results." The packaging also credits Dr. Marvin Heuer, FAAFP, Iovate's Chief Scientific Officer, with formulating the Hydroxycut products.

49.     An example of Hydroxycut product, ingredients and directions is as follows:

An example of a Hydroxycut product and its Supplement Facts is provided below.



**Supplement Facts**
Serving Size 2 Rapid Release Caplets
Servings Per Container 15

| Amount Per Serving | % Daily Value |
|---|---|
| Calcium (as hydroxycitrate)*** 156 mg | 16% |
| Chromium (as polynicotinate)*** 133 mcg | 111% |
| Potassium (as hydroxycitrate)*** 219 mg | 6% |

| Hydroxagen Plus® 1.32 g | |
|---|---|
| Garcinia cambogia extract (rind)*** | † |
|   Standardized for 60% hydroxycitric acid | |
| Gymnema sylvestre extract (leaf) | † |
|   Standardized for 25% gymnemic acids | |
| Phosphatidylserine-enriched soy lecithin | † |
|   Supplying 50% phosphatidylserine, 4% phosphatidylcholine, 2% phosphatidylethanolamine | |
| HydroxyTea® 473 mg | |
| Green tea extract (as Camellia sinensis) (leaf) | † |
|   Standardized for 90% polyphenols, 75% catechins, 45% epigallocatechin gallate - 117 mg EGCG | |
| Caffeine anhydrous | † |
| White tea extract (as Camellia sinensis) (leaf) | † |
|   Standardized for 50% polyphenols, 35% catechins, 15% EGCG | |
| Oolong tea extract (as Camellia sinensis) (leaf) | † |
|   Standardized for 50% polyphenols, 25% catechins, 15% EGCG | |
|   Supplying 200 mg of caffeine | |
| Ginger extract (as Zingiber officinale) (root) | † |
|   Standardized for 5% gingerols | |
| Raspberry ketone | † |
| Quercetin dihydrate (as Fava d'anta) | † |

†Daily Value not established.

**OTHER INGREDIENTS:** MICROCRYSTALLINE CELLULOSE, HYDROXYPROPYLCELLULOSE, COATING (POLYVINYL ALCOHOL, TITANIUM DIOXIDE, POLYETHYLENE GLYCOL, TALC), SODIUM CARBOXYMETHYLCELLULOSE, CROSPOVIDONE, STEARIC ACID, MAGNESIUM STEARATE, SILICA, ACESULFAME-POTASSIUM.

The directions for the product are stated as follows:

*For men and women:*

*Take 2 caplets with a glass of water 3 times daily, approximately 30 to 60 minutes before meals (preferably before breakfast, lunch and dinner). To assess individual tolerance, refer to the chart. Do not exceed 6 caplets in a 24-hour period. Do not take within 5 hours of bedtime. For best results, use Hydroxycut for 8 weeks in conjunction with a calorie-reduced diet and a regular exercise program. Do not snack after dinner. Consume ten glasses of water per day. Read the entire label before use and follow directions.*

– 3 –

50.     The FDA's reasoning for the May 2009 activity and warnings over Hydroxycut products can be found in a Health Hazard Evaluation Board document entitled *"The Problem: Liver toxicity following consumption of dietary supplements, Hydroxycut"*. Their conclusion was, "Three lines of evidence derived from multiple disparate sources suggest it is very likely that exposure to Hydroxycut can cause idiosyncratic hepatotoxicity" The report was authored by Linda Katz, M.D., interim chief medical officer of FDA's Center for Food Safety and Applied Nutrition.

## VI.    Hydroxycut Products are Recalled

51.    Iovate initiated a voluntary recall when it became aware that the U. S. FDA's assessment of 23 reports about consumers having experienced liver-related problems, as well as a small number of published case reports, was different from Iovate's analysis.  As of May 1, 2009 the list of products that were voluntarily recalled by Iovate included:

**HYDROXYCUT RAPID RELEASE REGULAR CAPLETS**

631656893649 Hydroxycut 140ct Cap US
631656833621 Hydroxycut 60 GNC US
631656600988 Hydroxycut 300ct Caplets US
631656890129 Hydroxycut 36ct Cap US "with CARDS"
631656282245 Hydroxycut 160ct Cap US *Discontinued*
631656873214 Hydroxycut 58ct Cap US
631656813418 Hydroxycut 70ct Cap US
631656808612 Hydroxycut 70ct Caps US *Discontinued*
631656808117 Hydroxycut 100 cap US *Discontinued*
631656818642 Hydroxycut 140ct Cap US *Discontinued*
631656882414 Hydroxycut 80ct Caps US *Discontinued*
631656843262 Hydroxycut 210ct Cap US
631656828665 Hydroxycut 210 cap US *Discontinued*
631656600582 Hydroxycut 60ct + 1 Hydroxycut Sachet WB US
631656600476 Hydroxycut 72ct + Hydroxycut Sachet WB US
631656600483 Hydroxycut 100ct Caplets US
631656600506 Hydroxycut 150ct Caplets US
631656601251 Hydroxycut 170 Caplets US
631656600452 Hydroxycut 30ct Caplets US

**HYDROXYCUT HARDCORE LIQUID CAPSULES**

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

631656600650 Hydroxycut Hardcore 120ct US
631656600834 Hydroxycut Hardcore 210ct US
631656001778 Hydroxycut Hardcore 30ct US
631656601435 Hydroxycut Hardcore 252ct US
631656601848 Hydroxycut Hardcore 30ct US Trial - Bodybuilding.com
631656601749 Hydroxycut Hardcore 120ct US NEW
631656601763 Hydroxycut Hardcore 252ct US
631656601756 Hydroxycut Hardcore 210ct US NEW

## HYDROXYCUT CAFFEINE-FREE CAPLETS

631656801224 Hydroxycut Caffeine Free 140ct Cap US
631656821246 Hydroxycut Caffeine Free 330ct Cap US
631656801217 Hydroxycut Caffeine Free 100ct Cap US
631656801231 Hydroxycut Caffeine Free 58ct Cap US
631656899122 Hydroxycut Caffeine Free 36ct Cap US
631656600544 Hydroxycut Caffeine Free 60ct US
631656600551 Hydroxycut Caffeine Free 72ct US
631656600568 Hydroxycut Caffeine Free 100ct US

## HYDROXYCUT MAX CAPLETS

631656601466 Hydroxycut Max 120ct bonus + 1Hyd Max Sachet WB US
631656601633 Hydroxycut Max 210ct Bonus + 1 Hyd Max Sachet WB US

## HYDROXYCUT REGULAR DRINK PACKET

631656860191 Hydroxycut Weight Loss Drink Mix 21pk Sachet - Wild Berry US
631656860313 Hydroxycut Weight Loss Drink Mix 21pk Sachet - Country Lemonade US

## HYDROXYCUT HARDCORE DRINK PACKET (IGNITION STIX)

631656701326 Hydroxycut Hardcore Drink Mix 2.7g Sachet - Blue Raspberry US
631656701319 Hydroxycut Hardcore Drink Mix 2.6g Sachet - Fruit Punch US
631656760118 Hydroxycut Hardcore Drink Mix 40pk x 2g Sachet - Fruit Punch US
631656760125 Hydroxycut Hardcore Drink Mix 40pk x 2g Sachet - Blue Raspberry US

## HYDROXYCUT CAFFEINE-FREE DRINK PACKET

631656760095 Hydroxycut Caffeine Free Drink Mix 21pk x 3.6g Sachet - Raspberry Ice US

## HYDROXYCUT MAX DRINK PACKET

631656860375 Hydroxycut Max Drink Mix 40pk x 2.4g Sachet - Wild Berry US
631656860382 Hydroxycut Max Drink Mix 40pk x 2.7g Sachet - Lemonade US

## HYDROXYCUT LIQUID SHOT

631656800159 Hydroxycut Weight Loss Single Shot 2oz - Wild Berry US
631656860207 Hydroxycut Weight Loss Shot 2 x 2oz Pk - Wild Berry US
631656860498 Hydroxycut Instant Weight Loss Shot 12 x 2oz - Wild berry US

## HYDROXYCUT MAX AQUA SHED

631656601855 Hydroxycut Max Aqua Shed 60ct Capsules US

## HYDROXYCUT HARDCORE RTD

631656860436 Hydroxycut Hardcore 4 x8oz RTD - Grape Infusion US
631656860399 Hydroxycut Hardcore 4 x 8oz RTD - Triple WildBerry US
631656860665 Hydroxycut Hardcore 12-pack RTD - Grape Infusion US
631656860467 Hydroxycut Hardcore 3 x 4-pack RTD - Grape Infusion US
631656860443 Hydroxycut Hardcore 3 x 4-pack RTD - Triple Wildberry US
631656860443 Hydroxycut Hardcore 3 x 4-pack RTD - Triple Wildberry US
631656860568 Hydroxycut Hardcore 12-pack RTD - Triple Wildberry US

## HYDROXYCUT 24

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

**HYDROXYCUT CARB CONTROL**

631656800036 Hydroxycut Carb Control 58ct Cap US
631656800029 Hydroxycut Carb Control 100ct Cap US
631656800012 Hydroxycut Carb Control 140ct Cap US

**HYDROXYCUT NATURAL**

631656600889 Hydroxycut Natural 100ct US

Please note that Hydroxycut Hoodia and Hydroxycut Cleanse products are not included in this recall; nor are any other Iovate products.

52.     On May 7, 2009 the scope of the Hydroxycut recall was widened. Additional products all involve additional packages and sizes of products previously referenced.   The UPC numbers added to the May 1, 2009 list are as follows:

| | |
|---|---|
| 631656800265 | Hydroxycut Hardcore 8 fl. oz. Grape Explosion |
| 631656800210 | Hydroxycut Hardcore 8 fl. oz. Triple Wildberry |
| 631656001501 | Hydroxycut 280ct-3 Pak Kit *Discontinued* |
| 631656001563 | Hydroxycut 280ct-6 Pak Kit *Discontinued* |
| 631656000658 | Hydroxycut 100ct-6 month supply (7 bottles+ 4 free) Kit |
| 631656600896 | Hydroxycut 2x60ct Club Pack US Kit |
| 631656000672 | Hydroxycut 100ct-1 month supply (1 bottle+1 free) Kit *Discontinued* |
| 631656874693 | Hydroxycut 58 cap 12-pack Target US Kit *Discontinued* |
| 631656000665 | Hydroxycut 100ct-3 month supply (4 bottles+2 free) Kit *Discontinued* |
| 631656002362 | Hydroxycut Sachet Twin Pack US Kit |
| 631656860498 | Hydroxycut Instant Weight Loss Shot 12 x 2oz - Wild berry US Kit |
| 631656660623 | Hydroxycut Hardcore Shredded Stack Kit120ct |
| 631656500585 | Hydroxycut 60 Rapid Release Caplets |

53.     Product Defendants negligently formulated, designed, manufactured, marketed, advertised, promoted, distributed and/or sold Hydroxycut products that can potentially cause serious health problems including, but not limited to, jaundice and liver failure.

54.     Product Defendants failed to properly research the ingredients used in the Hydroxycut products to ensure that they were safe for consumption and did not cause adverse health effects.

55.     As a result of the acts and practices detailed herein and Plaintiff's and Class members' reasonable belief in the quality and safety of Hydroxycut products, and the consequent reasonable belief

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300
2000 TOWN CENTER •

that Hydroxycut products would not have adverse health effects, Plaintiff and members of the Class were misled into purchasing the unsafe Hydroxycut products. Hydroxycut products did not provide the attributes and benefits Plaintiff and other members of the Class reasonably expected to receive, sought and thought they were receiving. As a result, Plaintiff and other members of the Class bought Hydroxycut products, which were not safe for consumption, that they would not have purchased had Product Defendants disclosed the material facts detailed herein, which were in their exclusive possession and that they were obligated to disclose or should reasonably have disclosed.

56.     Product Defendants failed to warn purchasers of the unreasonably dangerous characteristics associated with Hydroxycut products, including the fact that it may cause serious liver problems and other health problems.  Product Defendants failed to institute an earlier recall of Hydroxycut.

57.     Based on the above material facts and statements, Product Defendants owed a legal duty to Plaintiff and the Class to formulate, design, manufacture, market, advertise, distribute and sell Hydroxycut products that were safe for human consumption or not sell such products.

58.     Product Defendants breached their duty, which directly and proximately caused or resulted in Plaintiff and other members of the Class suffering injury in fact, a loss of money or property, the personal expenditure of time and resources and/or other forms of injury and/or damage.

59.     In addition, based on the duties owed to Plaintiff and other members of the Class by Product Defendants not to expose consumers to potentially harmful products, Plaintiff and other members of the Class are also entitled to the reasonable value of the cost of medically monitoring their condition, as the need for medical monitoring is a reasonable consequence of suffering liver related problems due to the consumption of Hydroxycut products and is thus necessitated as a direct result of use, and is reasonable considering 1) the significance and   extent of the consumption of Hydroxycut

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

products; 2) the relative increase in the chance of onset of liver problems as a result of using Hydroxycut products, when compared to the chances of liver problems absent such use; 3) the seriousness of the conditions for which the members of the Class are at risk; and 4) the clinical value of early detection.

60.     Product Defendants, in the exercise of reasonable care, should have known that Hydroxycut products potentially cause liver problems and other health problems including, but not limited to, jaundice and liver failure. Plaintiff and members of the Class might have reasonably been expected by Product Defendants to purchase and ingest Hydroxycut products and be adversely affected by their defective condition.

**VII.     Plaintiff's Experience**

61.     Prior to August, 2006, Plaintiff purchased Hydroxycut Products and did so because she had been exposed to the promotion, advertising and marketing of Hydroxycut Products as set forth in detail herein.  Entrusting Product Defendants, she relied on the reputations of the Product Defendants in purchasing Hydroxycut Products, and was misled into thinking that Hydroxycut Products were healthy and safe for use, which was false and misleading since the Hydroxycut Products potentially caused liver problems and other health problems, including but not limited to, jaundice and liver failure.  As a result of the Product Defendants' deceptive marketing scheme and a reliance on the purported trustworthiness and safety of Hydroxycut Products, she was misled in the purchasing and spending money on Hydroxycut Products.  In exchange for her money, Plaintiff received something other than what was represented, a product she did not see.  As a result she was injured.

62.     In August, 2006, Plaintiff was hospitalized because of flu-like symptoms.  She was lethargic, and jaundiced.  Upon the examination it was determined that the Plaintiff sustained liver damage.

63.     Plaintiff was administered high dose steroids to suppress her body's reaction to Hydroxycut induced toxicity.  Plaintiff experienced interruptions in regular sleep patterns, rapid swelling and huge weight gain, and experienced other adverse side-effects from the steroids.

64.     She was off of work from end of August 2006 through Thanksgiving 2006.  She was required to attend many doctors' appointments including a liver specialist every two weeks along with constant blood work monitoring.

65.     After the steroids, Plaintiff in March 2007 was put on Mercaptupurine to treat her liver injury, which she continues to take currently.  Her medication leaves her prone to sickness due to her immune system being suppressed.

66.     In January, 2007, Plaintiff was told that in all likelihood, her injuries were caused by use of Hydroxycut Products.  There was no other reason for her condition but for the use of Hydroxycut products, all other causes being ruled out by medical doctors.

67.     Her physicians reported this instant to the Food and Drug Administration but the FDA has no authority over medical devices.

## CLASS ACTION ALLEGATIONS

68.     Pursuant to Fed. R. Civ. P. 23 (a), (b)(1) and (b)(2) and (b)(3) Plaintiff Kristen Husby brings this action on behalf of herself and the following class defined as follows:

   *All individuals who purchased Hydroxycut during the relevant time period.*

69.     Excluded from the class are Product Defendants, authorized dealers, and their parents, subsidiaries, affiliates, employees, officers, directors and co-conspirators, any judges, justices or judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

22

70. Plaintiff and the Class bring this action for money damages, declaratory judgment and injunctive relief pursuant to subdivisions (b)(1), (b)(2) and (b)(3) of rule 23 of the Federal Rules of Civil Procedure.

71. Plaintiff reserves the right to modify the class description and the class period based on the results of discovery.

72. <u>Numerosity</u>: Plaintiff does not know the exact number of class members because such information is not in her possession. Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of class members is at least in the hundreds of thousands and members of the class are so numerous and geographically dispersed nationwide that joinder of all class members is impracticable.

73. <u>Common Questions of Law and Fact Predominate</u>: Product Defendants have acted with respect to the Class in a manner generally applicable to each class member. There is a well-defined community of interest in the questions of law and fact involved in the action, which affects all class members. The questions of law or fact common to the Class predominate over any questions affecting only individual members, including, but not limited to, the following:

   a.  What Product Defendants negligently failed to exercise reasonable care in the formulation, design, manufacture, promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Hydroxycut?

   b.  Whether Product Defendants intentionally or negligently made misrepresentations in connection with promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Hydroxycut?

   c.  Whether Product Defendants breached any warranties in connection with promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Hydroxycut?

   d.  Whether Product Defendants were under an obligation to institute an earlier recall of Hydroxycut products

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

e.     Whether Product Defendants have been unjustly enriched at the classes expense in connection with promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Hydroxycut?

f.     Whether Plaintiffs were injured in connection with Product Defendants' promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Hydroxycut?

g.     Whether Plaintiff and the Class are entitled to injunctive relief?

h.     Whether Plaintiff and the Class are entitled to declaratory judgment?

74.     <u>Typicality</u>: The claims of Plaintiff are typical of the claims of the other members of the Class in that all members of the Class have been harmed in substantially the same way by Product Defendants' actions,

75.     <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the class, and have the financial resources to do so.

76.     <u>Superiority of a Class Action</u>: Plaintiff and the Cass have suffered, and will continue to suffer, harm as a result of Product Defendants unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy as individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Northstar's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class in members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the class member.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

77. Adjudication of individual class members' claims with respect to the defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

78. Any and all applicable statutes of limitations have been tolled by Product Defendants affirmative and intentional acts of fraudulent conduct, concealment, and misrepresentation, alleged above. Product Defendants engaged in a concerted effort to keep information regarding the hepatoxicity of Hydroxycut from Plaintiff and the treating medical community, by concealing related adverse events, contradicting, silencing or attacking reputable healthcare providers and by affirmatively stating that Hydroxycut was safe and did not carry an increased liver injury risk. Because Plaintiff could not reasonably have discovered Defendant's wrongdoing at any time prior to the withdrawal of the drug on May 1, 2009 Product Defendants are estopped from asserting that this action is not timely.

## COUNT I
## PRODUCT LIABILITY ACTION

79. Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

80. The Product Defendants designed, formulated, manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

81. The use of Hydroxycut products at doses recommended potentially causes serious liver problems including, but not limited to, jaundice and liver failure.

82. The subject matter Product was not reasonably safe at the time it left the Product Defendants.

83.     That according to generally accepted production practices at the time said Product left the control of the Product Defendants, a practical and technically feasible alternative production practice was available that would have prevented the harm including, but not limited to, not supplying it to the general public in a context that it was given and/or changing the formula so as not to create risk of injury.

84.     The subject matter Product was not altered from the date of manufacture to the date of use.

85.     The subject matter Product was not misused by the Plaintiffs.

86.     As a direct and proximate result of the Product Defendants' defective condition of the Product, Plaintiff Kristin Husby has sustained serious and permanent injuries including but not limited to liver damage and is permanently medicated with MERCAPTUPURINE.

87.     As a direct and proximate result of the Product Defendants' defective condition of the Product, Plaintiff Kristen Husby has sustained loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress.

88.     As a direct and proximate result of the Product Defendants' defective condition of the Product, Plaintiff Kristen Husby will sustain in the future loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress because said conditions are permanent.

89.     Plaintiff Michael Husby has sustained a loss of services, support, and consortium, past, present and future, as a direct result of the Product Defendants' negligence.

**COUNT II**
**PRODUCT LIABILITY ACTION – WARNING**

90.     Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

91.     The Product Defendants designed, formulated, manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

92.     The use of Hydroxycut products at doses recommended potentially causes serious liver problems including, but not limited to, jaundice and liver failure.

93.     That Plaintiff, Kristen Husby, was not a sophisticated user of this Product and did not understand its chemistry, but rather relied upon false statements made by the Product Defendants as to the safety of the Product.

94.     Liver damage is not an inherent characteristic that is necessary in the formulation of diet drugs.

95.     Plaintiff, Kristen Husby, did not recognize the inherent danger in the use of the subject Product for she was a person with ordinary knowledge to the community.

96.     The Product Defendants failed to warn of the dangers of liver damage when using the aforesaid Product.

97.     As a direct and proximate result of  the Product Defendants' failure to adequately warn, Plaintiff, Kristen Husby, sustained serious and permanent injuries including, but not limited to, liver damage and is permanently medicated with MERCAPTUPURINE.

98.     As a direct and proximate result of the Product Defendants' failure to adequately warn, Plaintiff Kristen Husby, has sustained loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress.

99.     As a direct and proximate result of the Product Defendants' failure to adequately warn, Plaintiff Kristen Husby will sustain in the future loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress because said conditions are permanent.

100.     Plaintiff Michael Husby has sustained a loss of services, support, and consortium, past, present and future, as a direct result of the Product Defendants' negligence.

**COUNT III**
**BREACH OF EXPRESSED WARRANTY**

101.     Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

102.     The Product Defendants designed, formulated, manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

103.     The Product Defendants also sold the subject matter Product.

104.     The use of Hydroxycut products at doses recommended potentially causes serious liver problems including, but not limited to, jaundice and liver failure.

105.     The Product Defendants supplied a Product which failed to conform to its expressed warranty of being safe to use.

106.     As a direct and proximate result of the Product Defendants' breach of expressed warranty, Plaintiff Kristin Husby has sustained serious and permanent injuries including but not limited to liver damage and is permanently medicated with MERCAPTUPURINE.

107.     As a direct and proximate result of the Product Defendants' breach of expressed warranty, Plaintiff Kristen Husby has sustained loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress.

108.     As a direct and proximate result of the Product Defendants' breach of expressed warranty, Plaintiff Kristen Husby will sustain in the future loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress because said conditions are permanent.

109.     Plaintiff Michael Husby has sustained a loss of services, support, and consortium, past, present and future, as a direct result of the Product Defendants' negligence.

110.    Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

111.    The Product Defendants designed, formulated, manufactured, promoted, marketed, and advertised, packaged, labeled, and distributed Hydroxycut Products to consumers.

112.    The use of Hydroxycut products at doses recommended potentially causes serious liver problems including, but not limited to, jaundice and liver failure.

113.    Product Defendants have a duty to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Hydroxycut products, including a duty to ensure that Hydroxycut products are safe for use and a duty to warn that Hydroxycut products may cause serious liver problems and other health problems, including, but not limited to, jaundice and liver failure.

114.    As set forth in detail above, Product Defendants failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Hydroxycut products by failing to ensure that Hydroxycut products were safe for use.

115.    Specifically, Product Defendants were negligent in the formulation, design, manufacture, promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Hydroxycut products in that they, among other things:

    a.    Failed to use reasonable care in formulating, designing and manufacturing Hydroxycut products so as to ensure that they were safe for use and did not cause adverse health effects including liver problems and other health problems;

    b.    Failed to conduct adequate safety testing of Hydroxycut products and the ingredients used to make Hydroxycut products; and

    c.    Failed to accompany Hydroxycut products with proper warnings regarding the possible adverse health effects associated with its use including, but not limited to, jaundice and liver failure.

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

116.    At the time of supply of Hydroxycut, the Product Defendants had actual knowledge that the product was defective and that there was a substantial likelihood that the defect would cause injury that is the basis of the action, and the Product Defendants willfully disregarded that knowledge in the supply of Hydroxycut.

117.    Despite the fact that Product Defendants knew or should have known that its Hydroxycut products could cause serious adverse health effects, it continued to market and sell them to consumers, including Plaintiff and members of the Class, despite the reasonable possibility that Hydroxycut products caused liver problems and other health problems including, but not limited to, jaundice and liver failure.  They failed to institute an earlier recall.

118.    Product Defendants knew or should have known that Plaintiff and members of the Class would foreseeably be put at risk of liver problems and other health problems as a result of Product Defendants' failure to give warning of the adverse health effects associated with use of Hydroxycut products.

119.    As a direct and proximate result of the Product Defendants' negligence, Plaintiff Kristin Husby has sustained serious and permanent injuries including but not limited to liver damage and is permanently medicated with MERCAPTUPURINE.

120.    As a direct and proximate result of the Product Defendants' negligence, Plaintiff Kristen Husby has sustained loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress.

121.    As a direct and proximate result of the Product Defendants' negligence, Plaintiff Kristen Husby will sustain in the future loss of earning capacity, loss of services, incurred medical expenses, pain, suffering, loss of enjoyment of life, and mental and emotional distress because said conditions are permanent.

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

122.     Plaintiff Michael Husby has sustained a loss of services, support, and consortium, past, present and future, as a direct result of the Product Defendants' negligence.

## COUNT V
## GROSS NEGLIGENCE

123.     Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

124.     That prior to the date of incident, Product Defendants had knowledge that said Hydroxycut Products were defective and there was a substantial likelihood that the defects would cause of action injury to others such as, but not limited, Plaintiffs and failed to notify others.

125.     That prior to the date of incident, Product Defendants willfully disregarded knowledge of defective conditions within the aforesaid Hydroxycut Products.

126.     That Product Defendants' misconduct as alleged herein, was a proximate cause of the injuries and damages sustained by Plaintiff.

## COUNT VI
## RECKLESSNESS

127.     Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

128.     That prior to the date of incident, Product Defendants had knowledge that said Hydroxycut Products were defective and there was a substantial likelihood that the defect would cause of action injury such as, but not limited that, which is the basis of this action herein involved.

129.     Product Defendants willfully disregarded that knowledge.

130.     That Product Defendants' misconduct, as herein alleged, was a proximate cause of the injuries and damages sustained by Plaintiff.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

## COUNT VII
## BREACH OF IMPLIED WARRANTY

131.    Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

132.    That Product Defendants impliedly warranted that said Hydroxycut Products were free of defect and reasonable safe for its reasonably foreseeable use.

133.    Product Defendants breach its implied warranty in that said Hydroxycut Products were defective and not reasonably fit for its reasonably foreseeable use.

134.    That Product Defendants breached it implied warranty in the following particulars, including but not limited to:

   a.    Aforesaid Hydroxycut was defectively, manufactured and assembled;

   b.    Aforesaid Hydroxycut was not properly labeled;

   c.    Aforesaid Hydroxycut was not properly tested for safety to reduce the risk of injury;

   d.    Aforesaid Hydroxycut was not supplied with adequate warnings and instructions, nor was such warnings and instructions supplemented up to the time of incident.

135.    That the defective conditions of said Hydroxycut Products have heretofore alleged were a proximate cause of Plaintiff's injuries and damages as hereinbefore alleged.

## COUNT VIII
## FRAUD AND MISREPRESENTATION

136.    Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

137.    That Product Defendants' representation that said Hydroxycut Products were safe for its reasonably foreseeable uses amounted to fraud and misrepresentation.

138.    Product Defendants, as a proximate result of said fraud and misrepresentation, Plaintiff sustained injuries and damages as hereinbefore alleged.

139.    Plaintiffs repeat and re-allege all preceding paragraphs as if more fully set forth herein.

140.    That Product Defendants are in the business of "trade or commerce" as defined in MCL § 445.902.

141.    That Product Defendants violated MCL § 445.903 and committed unfair and deceptive trade practices for the reasons set forth in this Complaint.

142.    That as a proximate result of Product Defendants' violation of the Michigan Consumers Protection Act, Plaintiff, a person who suffered loss, sustained injuries and damages as hereinbefore alleged, including the cost of the Hydroxycut she purchased.

**WHEREFORE**, Plaintiffs Kristen and Michael Husby claim judgment against Product Defendants, Iovate Health Sciences USA, Inc., Iovate Health Sciences International, Inc., Iovate Health Sciences Group, Inc., Iovate Health Sciences Research, Inc., Iovate HC 2005 Formulations Ltd., Muscletech, Inc., Muscletech, Muscletech Research and Development, Inc., Jointly and Severally, as follows:

1.    Certification of the proposed class and appoint Plaintiff Kristen Husby and her counsel as class representative and class counsel, respectively, pursuant to Fed. R. Civ. P 23;

2.    Adjudge and decree that Product Defendants have engaged in the conduct alleged herein;

3.    Award Plaintiffs and class any and all damages as allowed under the law;

4.    Award Plaintiffs and the Class pre and post-judgment interest as allowed by law;

5.    Award counsel for Plaintiffs and the Class reasonable attorneys' fees and costs; and

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

6.      Granting such other and further relief that this Court may deem just and proper.

Respectfully submitted,

SOMMERS SCHWARTZ, P.C.

<u>s/ Jason J. Thompson</u> (P47184)
Robert H. Darling (P25523)
Matthew G. Curtis (P37999)
Attorneys For Plaintiffs
2000 Town Center Drive, Suite 900
Southfield, MI  48075-1100
(248) 355-0300

*Plaintiff's Counsel*

Dated: May 20, 2009

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in the instant action pursuant to Fed. R. Civ. P 38.

Respectfully submitted,

SOMMERS SCHWARTZ, P.C.

s/ Jason J. Thompson (P47184)
Robert H. Darling (P25523)
Matthew G. Curtis (P37999)
Attorneys For Plaintiffs
2000 Town Center Drive, Suite 900
Southfield, MI 48075-1100
(248) 355-0300

*Plaintiff's Counsel*

Dated: May 20, 2009